And our last case this morning is Daniel Koch v. Jerry Bailey Trucking. And this argument is on Zoom. Alright, I see both counsel. Mr. Weldy, you may proceed. Good morning, Your Honors. If it pleases the Court, my name is Ronald Weldy from Weldy Law on behalf of the appellants in this matter. After six and a half years of litigation, this matter is settled on the eve of trial. Thereafter, the District Court approved the settlement and determined the statutory attorney's fees and costs to be awarded to the employees. The issues before the Court today concern the decision of the District Court to award less than half of the presumptive lodestar amount sought. The abuse of discretion standard applies in this matter because it is believed that the District Court has superior knowledge of the facts. However, when a District Court exercises its discretion based upon erroneous findings of fact, then the decision of the District Court is an abuse of discretion. In this matter, the decision of the District Court should be reversed because it is based upon a misunderstanding of facts by the District Court, which permeates its entire opinion as to the amount of statutory attorney's fees to be awarded. Mr. Weldy, can you address why these arguments aren't waived? Surely, Your Honor. Thank you for bringing that up. Your Honor, all the communications between counsel that happened after the judgment was entered are before the Court. And the only thing that those communications evidence is that we agreed as to where the check should be voluntarily sent by the defendants to make payment as to the attorney's fees and costs awarded. And we had an agreement as to the language of the satisfaction of judgment. Other than that, there was no other agreement whatsoever between the parties. Right. That language, though, satisfaction of the judgment, that's pretty strong language. I don't know what more the defendant's counsel could have done to suggest to you that that was it. That was the end of the case. Finished. And you got the check, deposited it, and then sought additional attorney's fees. Your Honor, I mean, there's no other title for it to apply here. That's my point. They in fact paid the entire judgment. It was satisfied. I mean, you know, whenever a judgment is paid, they're entitled to put all their creditors on notice and everything that they paid that judgment. That has nothing to do with the appellate rights. Well, it does, but it may not have anything to do with the attorney's fees. You're saying that satisfaction of the judgment here didn't have anything to do with satisfaction of the attorney's fees. You're right, Your Honor. I was not about to disagree that if they paid the entire amount of the judgment that they had in fact satisfied the judgment and were entitled to put on a piece of paper with the court notifying the court and anybody, any bank, any creditor, anybody doing business with them, that they in fact paid the amount that the court had told them to pay. Would they have satisfied? I was about to stand in that way. Would they have satisfied the judgment if they didn't pay the attorney's fees portion of the award from the district court? You see, I guess what I'm coming at is I'm not sure you would have agreed to that filing if they said, here's what we're going to do. We're going to pay you. We're going to pay your clients all that the court awarded, but we're not going to pay your attorney's fees. But we then want to file something that says we've satisfied the judgment in full. You're correct, Your Honor. I would not have agreed with that. I would have said if you want to put on a satisfaction of judgment, it'll be only as to the amount that the courts had approved that had to be paid to the class. Well, to the 11 plaintiffs, I would not have agreed that it goes to the attorney's fees. Your Honor, to speak to your point, it's supposed to be a mutual manifestation by the parties that there's a settlement here. And quite frankly, a settlement is a contract. What consideration did the employees receive for this waiver of their appellate rights? And the answer is there's no consideration here. So. This matter was brought by Mr. Coke and Mr. Wells on behalf of themselves and their fellow dump truck drivers as a combined class and collective action under the Fair Labor Standards Act for overtime wages and under Indiana's wage payment claim statute for regular wages. For the failure to pay time spent prior to being permitted to clock in and time spent after being instructed to clock out, as instructed by Jerry W. Bailey Trucking. Notice of the collective action, the class action were mailed out to the potential class members on September 25th, 2015. Following the notice deadline, the collective action class consisted of 23 class members. Thereafter, an employer provided discovery with regard to the class members, including their timekeeping records and pay stubs. The class council created damage spreadsheets for each of the employees based on the information contained in the timekeeping and pay stub records. The settlement conference was held on August 9th, 2017, but the parties failed to sell the case on behalf of the 23 employees. In April 2018, two and a half years after employers were aware of the number of collective action class members, it finally moved to decertify the class and collective actions and also filed a motion for summary judgment. Employees likewise filed a motion for summary judgment, and on May 16, 2019, Judge Brady decertified the collective class, but did not rule on the motions for summary judgment. And following decertification, nine individual employees were added to the complaint and the complaint moved forward. Judge Brady, on a ruling on the second motions for summary judgment, held, and I quote, employers, I'm sorry, employers, quote, had violated both state and federal wage laws. And on November 4, 2020, just one month shy of the jury trial, the claims of the 11 employees were settled. Mr. Weldy, can I, we don't have much time, and I think you'll agree, Judge Brady had a lot of discretion here. Unless she applied the wrong law about these fee awards, she had quite a great deal of discretion. And so on some of her more specific findings, for example, the amount of hours that you spent defending your adequacy to act as class counsel, you know, she says 30 hours is too much. My question is, presumably, that's something you had to do before in a different case. And, you know, was it necessary to reinvent the wheel here? Did you need 30 hours for that? No, Your Honor, that's not something I had to do before in a different case. Okay. I'm sorry. I did have to, that was from scratch. Thank you. Thank you. I mean, I briefed adequacy, but not to the, never, never to nearly that extent. That was a deep dive into adequacy. Okay. And then my second question is, if you do succeed on all of your arguments on appeal, your recovery will be double what your clients get here. How do we take that disparity into account? Your Honor, I recovered on behalf of 11 people. I mean, if I would have done each of these individually, you know, this bill would have been three times the amount of this. You know, this is, doing them with 11 people in one case was a great efficiency for both myself and for the attorneys to be awarded against defendants. Having to do each of these individually would have cost a tremendous amount more. Your Honor, I also secede the rest for my rebuttal. Thank you. That's fine. Mr. Storer. Thank you, Your Honors. I was having difficulty in unmuting myself on this Zoom conference. May it please the Court, my name is Ted Storer, and I'm counsel for the appellees in this case. Jerry W. Bailey, Trucking Incorporated, in the estate of Jerry Bailey, who is now deceased. As you know, this appeal is a request for additional attorney fees for a decertified class in collective action for claimed wages under both the FLSA and Indiana state wage statutes. This resulted in a settlement to the wage claimants after motion practice, but before a trial. And the two issues facing the Court in regard to this request for additional fees are whether the District Court acted within its discretion in determining a reduced award of attorney fees and costs to appellants in an amount that was still greater than the recovery of the actual plaintiffs, and whether the District Court erred in denying the motion to amend findings or the motion to correct error, in part due to the issue of plaintiffs' counsel accepting payment of the original order of fees and costs. It's the position of the appellees, of course, that the District Court acted appropriately within its discretion in awarding the fees that it did, based on a reduced hourly rate for the locality, specific reductions in the hours for certain categories of activities, and a further reduction of the Lodestar amount. The standard of review on both issues is an abuse of discretion, which the Pickett v. Sheridan health care case described as a highly deferential review of the District Court's position. This is inherently a factual decision in review. Opposing counsel adequately stated that this case procedurally began with a complaint by one claimant. There was then an amended complaint at a second claimant, and before plaintiffs' counsel filed a motion to certify, four other individuals filed consents to join with the District Court. Looking back, it's the appellee's position that a class or collective action was never necessary to vindicate the rights of any workers, as six individuals were prepared to join in an action even before a motion for certification. We find that this is very important, as the District Court found that a reduction in the Lodestar amount of the requested fees was based on the decertification of the class and collective action as a lack of success. As was discussed in the briefs, the District Court specifically asked for briefing originally on the adequacy of class counsel, and initially denied certification on that basis. Upon the motion to reconsider, the court opted to allow counsel to be appointed and provisionally certify the class. However, at the end of the case, the District Court found that this was an area of fees that should not be awarded. Once the class was conditionally certified, even though up to 60 individuals could have been class members, only 14 opted into the collective, and 16 remained in the class after other individuals opted out. Some of those numbers overlapped, as individuals could only participate in some, some in both. After further motion practice, the District Court deemed these numbers to be insufficient to continue the class and collective, and decertified the same. There were other grounds to decertify, and the court ultimately ruled only on the numerosity standard. Ultimately, only 11 plaintiffs continued to join the case, which I would point out is less than twice the number of individuals who had attempted to join or consent prior to the motion for class certification. These facts are sufficient to show that a major issue in this case for the appellants was pursuing the class or the case as a class in collective action. And therefore, the decertification is evidence of substantial lack of success supporting the reduction of fees on the lodestar basis. After the decertification, additional discovery consisting primarily of only deposing the remaining claimants, which occurred at the outset of COVID. A second round of briefing occurred, as the District Court found was very similar to the first, and the court made ultimately no determination on damages or liability, but did find that the practices of the employer violated both the FLSA and the state wage claims. However, these depositions did not uncover any great issues on fees or discrepancies on the days or time work, which would result in a substantial reworking of the calculation of damages. And furthermore, your honors, the District Court did not enter a judgment for the damages based upon these calculations. And as the court is well aware, these are issues where the court, District Court determined that there was duplication of effort, multiplication of time spent, and some of the time spent by plaintiff's counsel was overreaching. If the District Court already accounted for the decertification by, you know, with this across-the-board cut, by reducing the lodestar, why was it appropriate to then also deduct hours, strike hours, that Mr. Weldy spent litigating class issues and calculating damages for these putative class members? That's an excellent question. Our position is that it's very difficult for the court, even though the court reviewed carefully all of the time entries and stated in both the original order on fees as well as the motion to reconsider that she spent a great deal of time reviewing the time entries. Many of the time entries themselves were duplicative and they were joined in both of the joint motion practice. And then joint motion practice initially, which was both the decertification and the original motion for summary judgment, were combined and the issues were intertwined. And it's the position of the appellees that it's very difficult for the District Court to completely unwind those two areas. So therefore, under the Barfield case, it was appropriate for the District Court to both reduce for specific time entries as well as reducing the fees from the lodestar amount. And I think if you look at the actual amounts awarded, the court found that the damages paid to the claimants was actually almost one third of the original amount of attorney fees requested. And I think that the court could take that into consideration as well when you award fees that would substantially exceed the actual amount of damages for the result to the actual claimants. So we believe that that's directed and is impacted by the Barfield decision because the original motion and a lot of the time entries were intertwined. I would also say that that issue is impacted by the Hensley Supreme Court case, noting that even if there's partial or limited success, the product of the hours recently expended in litigation which exceeds or creates an excessive amount can be reduced where the claims were interrelated, even if they were non-frivolous or raised in good faith. In regard to the timing and the fees to be awarded, we believe that both Barfield and the Hensley Supreme Court case are the cases that control this particular issue. There were only 11 claimants at the end. And if you look at the fees requested and even requested on appeal, those are approximately $20,000 per claimant, which the appellees would indicate to the court or suggest to the court may be excessive when you look at the value of these recoveries. As the district court found, the recoveries for the individual claimants ranged anywhere from 17% to 69% of the actual damages claimed on summary judgment. We believe ultimately that the district court was correct in ordering both a reduction for specific categories of time entries as well as a reduction in the load star amount. There is the issue of waiver that was addressed by Justice Kirch earlier. We would say and argue that in this particular case, the settlement and the judgment for the individual claimants was satisfied substantially before the timing of the request for attorney fees. As you may recall from the district court's order, even after the settlement occurred, there were a number of extensions that were requested in order to satisfy and to determine the amount of attorney fees. That time was spent with satisfying and the damages to the individual claimants was satisfied substantially before the order of the court in regard to attorney fees. It was only after the court entered its award for attorney fees that counsel reached out to discuss satisfaction of the award. That was an award of the satisfaction of attorney fees, and I believe that that's noted in the actual satisfaction that was filed with the district court. There was no other reason to file the satisfaction other than to conclude the case in totality. There's no reason to settle the case once a judgment has been entered. You can address and satisfy that award in counsel's opinion. We were direct in saying that this would satisfy the entire judgment in the entire amount and that there was no explicit statement on either party that an appeal or reconsideration was going to occur. There's limited economic benefit in this particular case to the employers because the amount of the award and prejudgment interest would be minimal. And the real reason to determine the case to be concluded would be to satisfy and cut off any additional rights to proceed on their request for attorney fees and also to conclude any ancillary state litigation that was going on with the Baylius State. Forgive the lack of familiarity with your notice of satisfaction there, but why not just say that with the notice of satisfaction and no appeal shall lie? Why isn't the language explicit about appeal rights after that? That's an excellent question, Judge. Normally, the satisfaction of award just simply says it's a satisfaction of award. I suppose looking back on it now, we could have identified that no additional appeal could occur, but I'm not aware that that language is generally found in a satisfaction. Normally, I would also point out that a satisfaction is filed by the plaintiffs as opposed to the defendant who is satisfied, excuse me, satisfying a judgment or an award. And the intent was to allow and to do that to reduce additional time on opposing counsel. I see that my time's expired. We believe that the court should affirm both the original order on attorney fees as well as the order on the motion to reconsider. Thank you very much, Mr. Weldy. Thank you, Your Honor. The fact that we believe that the District Court had a misunderstanding or erroneous finding of fact, which removes the discretion or makes the discretion an abusive discretion, is that based upon three statements, which we've identified in our briefing, one in particular, it appears that the court believed that prior to decertification, that I as class counsel was prosecuting this case on behalf of approximately 50 to 55 class members. And the statement which most supports that is we call it statement number three, and I quote, since the actual number of players was around one-fifth of the number of class members originally represented to the court. And since the challenge hours were spent while the class and collective action were still certified, the court finds that the same reduction is appropriate. As a result, the court will permit five hours of paralegal time for creating the damage spreadsheets to be transferred to defendants. This, to me, shows that the District Court, for some reason, believed that we were prosecuting this case on behalf of 50 to 55 class members instead of the 23 class members, which had opted in or not opted out of the case right after the notice period was done in 2015. And this explains why it is that the District Court ruled as it did throughout all of its rulings regarding the attorney's fees in our mind. This misunderstanding, this erroneous finding of fact permeates the entire decision with regard to attorney's fees. And as such, each of those decisions is an abuse of discretion and needs to be reversed by this court. Thank you for your time, Your Honors. Thank you. Our thanks to both counsel. The case is taken under advisement and that concludes today's calendar. The court is in recess.